Carlos E. LOPEZ, Appellee,

v.

McLEAN TRUCKING CO., Defendant.

Appeal of LOCAL 677, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA.

Nos. 1338, 1339, Dockets 85–9013, 85–9015 and 85–9047.

United States Court of Appeals, Second Circuit.

Argued May 19, 1986.

Decided Aug. 20, 1986.

Burton S. Rosenberg, Hamden, Conn. (Norman Zolot, Hamden, Conn., of counsel), for appellant.

Ernest C. LaFollette, Fairfield, Conn., for appellee.

Before OAKES, MESKILL, and MAHONEY, Circuit Judges.

OAKES, Circuit Judge:

This appeal is from a judgment of the United States District Court for the District of Connecticut, Circuit Judge Walter R. Mansfield, sitting by designation. Carlos Lopez brought suit against his employer, McLean Trucking Co. ("McLean"), and against appellant Local 677, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, under section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185 (1982), claiming that the termination of his employment as a truck driver was in breach of the labor agreement between McLean and Local 677 and that the local violated its duty to represent him fairly during the arbitration of his challenge to his discharge. Following trial, the jury rendered a verdict awarding $45,000 against the trucking company and $30,000 against the union. Judge Mansfield denied motions for judgment notwithstanding the verdict, but ordered a new trial absent consent to a remittitur against the company to $16,000 and against the union to $14,000. On November 25, 1985, Lopez consented to the remittitur. McLean subsequently filed a petition in bankruptcy and has obtained a stay of proceedings from this court. The only argument that Local 677 advances on its appeal is that the evidence at trial did not support the verdict that the union violated its duty of fair representation and that Judge Mansfield therefore erred in refusing to grant judgment notwithstanding the verdict. We affirm.

McLean fired Lopez on the ground that he had been grossly negligent in the operation of a truck. According to the termination letter that he received from McLean, discharge was for involvement in a "fixed object accident" resulting "in severe damage to both our unit as well as the house involved due to gross negligence on your own part to check for proper clearance." Taking the evidence in the light most favorable to Lopez, the following account of the accident and its aftermath—an account based primarily on Lopez's trial testimony —emerges. The accident occurred when Lopez was driving a heavily loaded McLean tractor trailer on the Reynolds Bridge Road in Thomaston, Connecticut, a route which he had driven without incident for a period of five years. But on this occasion, at about 7:40 p.m. on March 21, 1980, there was heavy rain, fog, and high winds. Because the defroster was defective, there was mist on the inside of the front windshield. Lopez said that he was traveling in second gear at about fifteen miles per hour, keeping his eyes on the road and not looking up at the trees, when he heard a "big thud" on top of the trailer and slowly brought his vehicle to a stop, thirty to sixty feet from where he hit the branch. He next proceeded a few hundred feet down

the road to reach a place where he could turn around and then returned to the scene of the accident. Upon his return, he noted that a branch had been separated from a tree and was leaning against a house. He also noted that the house was dark although the house next door had lights on, that the tree from which the branch came was about five feet from the road, and that the house was fifty to sixty feet from the tree. Police Officer Edward Andreski of the Thomaston Police Force testified that he had received a call around 7:15 or 7:20 that a tree limb was down on Reynolds Bridge Road and arrived on the scene at 7:40, about the same time as Lopez returned. From this evidence the jury could have inferred that a branch, perhaps the branch Lopez hit, had already partially fallen and knocked out the electricity and telephone and the homeowners had called the police from another location. Thus, as Judge Mansfield noted, the jury could conceivably have accepted Lopez's testimony at trial that he was driving slowly in the wet conditions described and that the tree limb had partially fallen on the house earlier by the force of the storm, rather than being knocked there by the force of the collision with Lopez's truck.

On the day Lopez was terminated, three days after the accident, the local business representative of the union, Anthony Bocci, met Lopez at McLean's terminal. Accompanied by the management representative and another union official, Bocci and Lopez then traveled to the scene of the accident. There they observed that the place on the tree from which the branch came was over thirteen or fourteen feet above ground; they also saw a piece of aluminum from the trailer on the ground in front of the house and another piece embedded in the wood of the tree limb, which by then had been cut for firewood. Lopez sought Bocci's aid in pursuing his grievance challenging his discharge, but Bocci was unhelpful. According to Lopez, Bocci said that there was "no sense in filing a grievance because I [Lopez] was terminated." He told Lopez to file his own grievance, but did nothing in terms of preparation for the arbitration hearing. At the hearing, McLean's labor relations representative claimed that Lopez was traveling at an excessive rate of speed and drove the limb on top of the house some fifty feet away. Bocci gave the management labor relations representative his file on Lopez, which contained materials given by Lopez to Bocci, and portions of that file were referred to by the McLean representative. Bocci did not argue or present any case on behalf of Lopez. Lopez claimed that he was not allowed to speak on his own behalf and that Bocci had informed him that he could not bring witnesses to the arbitration hearing. Thus Lopez was prevented from bringing in Officer Andreski, whose testimony would have tended to show that the damage to the house at the accident scene occurred before Lopez came along.

Judge Mansfield, in refusing to set aside the verdict, found that the jury could have rejected the testimony contrary to Lopez's offered by Bocci and a Mr. Salvatore, chairman of the arbitration committee, and that it could permissibly have concluded that Lopez's testimony about the arbitration was credible. Moreover, as Judge Mansfield found, on a crucial point defense testimony bolstered Lopez's case: Salvatore conceded that at an arbitration hearing a grievant may testify on his own behalf and call witnesses. The court noted that the jury could thus have properly found that Lopez was denied his right to testify personally at the arbitration proceeding and that the union not only failed to exercise that right on his behalf but that, rather than letting him describe his recollection in person, it improperly relied on his own written report. With reference to the last point, the judge observed that Lopez was a person of limited education who did not write as well as he spoke; this issue was thus of critical importance in determining whether the union had violated its duty of fair representation.

When this court reviews, as it is called on to do here, the district court's denial of a motion for a judgment notwithstanding the verdict, it performs "essentially the same

function" that the trial court performs when ruling on a motion for a judgment notwithstanding the verdict. *Schwimmer v. Sony Corp. of America,* 677 F.2d 946, 951 (2d Cir.), *cert. denied,* 459 U.S. 1007, 103 S.Ct. 362, 74 L.Ed.2d 398 (1982). The district court's denial should be overturned only when, viewing the evidence in the light most favorable to the nonmoving party,

> (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him.

*Mattivi v. South African Marine Corp.,* 618 F.2d 163, 168 (2d Cir.1980). In this case the decision below should not be disturbed. The evidence regarding the representation of Lopez at the arbitration hearing that Judge Mansfield referred to in denying the motion for judgment notwithstanding the verdict was certainly sufficient. It entitled the jury to find that the union violated its duty of fair representation by behaving in a manner that was " 'so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary.' " *NLRB v. Local 282, International Brotherhood of Teamsters,* 740 F.2d 141, 147 (2d Cir.1984) (quoting *Robesky v. Qantas Empire Airways, Ltd.,* 573 F.2d 1082, 1090 (9th Cir.1978)).

Judgment affirmed.