Richard SAMUELS, Plaintiff–Appellant,

v.

AIR TRANSPORT LOCAL 504,
Defendant–Appellee.

No. 516, Docket 92–7062.

United States Court of Appeals,
Second Circuit.

Argued Jan. 11, 1993.

Decided April 21, 1993.

reverse the judgment n.o.v. and remand with directions that it be vacated and the jury verdict reinstated.

## FACTS

Samuels began employment at Pan American World Airways, Inc. in 1969. He became Crew Chief of Hangar 19 at John F. Kennedy International Airport, a position for which he successfully bid, in January 1981. The Crew Chief position was subject to a collective bargaining agreement between Pan Am and the union. Pan Am restructured its operations at J.F.K. in 1984, merging Hangar 19 with Hangars 14 and 17. Samuels became Crew Chief of the consolidated hangars, and Marjorie Blades—who had been Crew Chief of Hangar 17—was demoted.

As a result, Blades filed a grievance challenging the loss of her position. The union pursued this grievance through the internal grievance procedure up to the Field Board of Adjustment. Upon review of the grievance, the Field Board directed the parties to rebid the position, and when Samuels refused to bid, he was removed as Crew Chief of the consolidated hangars in December 1985. Appellant then requested that the union file a grievance on his behalf challenging the loss of this position under the collective bargaining agreement. In a letter dated December 12, 1985 Local 504 informed appellant it could not represent him in the internal grievance process because "field board decisions are binding on the parties." Later, the union relented and represented Samuels throughout the internal grievance process, though it was to no avail.

Samuels instituted the instant action in the Southern District of New York in 1986. His complaint alleges that when the union initially refused to represent him it breached its duty of fair representation. The district court construed the complaint to assert an additional claim of inadequate representation during the entire grievance procedure. It was while the case was pending in the district court that the union agreed to represent Samuels before the Field Board. Appellant's

Richard Samuels, pro se.

Asher W. Schwartz, New York City (O'Donnell, Schwartz, Glanstein & Rosen, of counsel), for appellee.

Before: VAN GRAAFEILAND, CARDAMONE, and JACOBS,[*] Circuit Judges.

CARDAMONE, Circuit Judge:

We have before us a *pro se* litigant claiming that his union failed to afford him fair representation through the arbitral process after he was demoted. A union member is entitled to fair representation; and, though this *pro se* litigant deserved no more representation than the member of Local 504 who, as a result of her grievance succeeded to his position, he deserved no less.

Richard Samuels, *pro se,* brought suit against defendant Air Transport Local 504 of the Transport Workers Union of America (Local 504 or union), alleging it breached its duty of fair representation in violation of the Railway Labor Act, 45 U.S.C. § 151 *et seq.* (1988). Samuels' claims were submitted to a jury that found in his favor. The United States District Court for the Southern District of New York (Metzner, J.) granted the union's motion for judgment notwithstanding the verdict. For the reasons that follow we

---

[*] Judge Jacobs disqualified himself in this case and took no part in this decision.

grievance was ultimately denied in a Field Board decision dated July 15, 1987.

The case went to trial in the district court in November 1991. Although Samuels had been *pro se*, he secured *pro bono* counsel to represent him at trial where, as noted, he obtained a favorable verdict. Finding that his union's conduct had caused him lost wages, the jury awarded Samuels $4,417. In overturning this verdict and granting the union's motion for j.n.o.v., the trial court reasoned there was no proof that Pan Am violated the collective bargaining agreement. Further, it believed the evidence did not establish conduct on the part of Local 504 that was arbitrary, discriminatory or in bad faith or that undermined the arbitral process. This appeal followed.

## DISCUSSION

### A. *Judgment Notwithstanding the Verdict*

■ The sole issue presented is whether in granting j.n.o.v. the district court applied the proper standard. A motion for j.n.o.v. should be denied unless, viewed in the light most favorable to the nonmoving party, "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached." *Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir.1970). In other words, judgment n.o.v. is to be granted only when there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or ... such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [jurors] could not arrive at a verdict against him." *Mattivi v. South African Marine Corp., "Huguenot,"* 618 F.2d 163, 168 (2d Cir.1980). We review the grant of a motion for judgment n.o.v. guided by the same standard as the district court. *See Vasbinder v. Ambach*, 926 F.2d 1333, 1339 (2d Cir.1991).

### B. *Motion for a Directed Verdict*

Fed.R.Civ.P. 50 governs the procedure for removing a judgment from the verdict-winner by the use of either a motion for a directed verdict, Rule 50(a) or a motion for judgment notwithstanding the verdict, Rule 50(b). We recognize that effective December 1, 1991, Rule 50's use of the terms "judgment notwithstanding the verdict" and "directed verdict" were abandoned. "Judgment as a matter of law" now encompasses pre-verdict and post-verdict motions. But the standard for granting the motion has not changed. *See* Fed.R.Civ.P. 50 Advisory Committee's note, 1991 amendment.

Rule 50(b), in effect at the time of the instant trial, stated

> Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the *legal questions raised by the motion.*

Fed.R.Civ.P. 50(a) (1988) (emphasis added). Rule 50(a), providing for motions for directed verdict and incorporated by reference in Rule 50(b), stated that "a motion for a directed verdict shall state the specific grounds therefor." Fed.R.Civ.P. 50(b) (1988). These two rules read together limit the grounds for judgment n.o.v. to those specifically raised in the prior motion for a directed verdict.

The principal reason for establishing the motion for directed verdict as a condition precedent for the motion for j.n.o.v. is to avoid making a trap of the later motion. That is, the rule gives the party against whom the motion for j.n.o.v. is made notice of defects in its proof so that it can cure them before the case goes to the jury, *see American Protein Corp. v. AB Volvo*, 844 F.2d 56, 61 (2d Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988) or, as Professor Moore puts it, the requirement of the condition precedent motion is "in keeping with the spirit of the rules to avoid tactical victories at the expense of substantive interests." 5A James W. Moore *et al.*, Moore's Federal Practice 50–89 (2d ed. 1993).

■ As a threshold matter, we must determine whether the movant met the procedural requirements of Rule 50(a). We examine the trial record, which reveals that at the

close of all the evidence, counsel for the union moved:

MR. RACHLIN: Your Honor, at this time, may it please the court, I should like to renew the motions I made at the end of the plaintiff's case.

I think the testimony that has been offered by the defendants illustrates that, as a matter of law, the plaintiff was given his fair representation and adequate representation at the proceedings.

You have heard the testimony of a variety of witnesses. There is no need on the part of the defendant to have won the case for Mr. Samuels. All that is required to have been done is that they exercise good faith and do what they have to do.

You have heard as a matter of law, in fact, that Mr. Samuels himself was most uncooperative. You heard it through the documents, and you heard it out of Mr. Samuels' own mouth. It happened from the very beginning; he didn't cooperate.

On the other hand, you have heard the witnesses describe how Mr. Gulluscio and Mr. Beaumont testified as to what his role was, and the role of the field board.

I think for a whole variety of reasons that this is a matter that—which the court should exercise its discretion and dismiss the complaint.

THE COURT: Are you moving for a directed verdict also?

MR. RACHLIN: And moving for a directed verdict.

THE COURT: The motion to dismiss is denied. The motion for a directed verdict, decision is reserved.

Because the district court had denied the defendant's prior motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), the present motion to dismiss was at best moot.

Moreover, the standard for reviewing a Rule 12(b)(6) motion differs from review of a Rule 50(a) motion for a directed verdict. On a motion to dismiss a complaint, the court simply determines its legal viability. *See Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980). On such a motion only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken are considered. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47–48 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989). A complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

In contrast, a motion pursuant to Rule 50(a) requires the court to go beyond a cursory examination of the complaint's viability. The moving party must set forth a statement of the specific grounds it relies on for the relief sought. *See* Fed.R.Civ.P. 50(b); *Meriwether v. Coughlin,* 879 F.2d 1037, 1044 (2d Cir.1989) (citing *Bonjorno v. Kaiser Aluminum & Chem. Corp.,* 752 F.2d 802, 813–15 (3d Cir.1984), *cert. denied,* 477 U.S. 908, 106 S.Ct. 3284, 91 L.Ed.2d 572 (1986)); *see also Diercks v. Durham,* 959 F.2d 710, 714 (8th Cir.1992) ("specific reason" must be stated for the directed verdict motion); *Lifshitz v. Walter Drake & Sons, Inc.,* 806 F.2d 1426, 1429 (9th Cir.1986). The adequacy of a directed verdict motion is tested by whether counsel observed the specificity requirement of Rule 50(a). *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.,* 904 F.2d 677, 683 (Fed.Cir.), *cert. denied,* 498 U.S. 992, 111 S.Ct. 537, 112 L.Ed.2d 547 (1990).

█ Counsel's motion for a directed verdict in the case at hand failed to state any grounds for the relief requested. The basis for defendants' prior motions to dismiss was inconsistent with the specificity standard because the issue raised by the motions concerned the weight of conflicting evidence, rather than its sufficiency. Therefore, the motion for judgment as a matter of law was not sufficiently specific to alert Samuels to alleged deficiencies in his proof. Relief from the specificity requirement is available only to avoid "manifest injustice" to the moving party. *Baskin v. Hawley,* 807 F.2d 1120, 1129–30 (2d Cir.1986). The only inquiry that remains for our consideration therefore is whether Local 504 suffered such an injustice in this trial.

### C. *Sufficiency of the Evidence*

■ The standard for determining whether evidence is sufficient to create an issue of fact for a jury is the same in the trial court as it is on appeal. *Howes v. Great Lakes Press Corp.*, 679 F.2d 1023, 1030 (2d Cir.), *cert. denied*, 459 U.S. 1038, 103 S.Ct. 452, 74 L.Ed.2d 605 (1982). In considering a motion for j.n.o.v. a trial court must view the evidence in a light most favorable to the non-movant and grant that party every reasonable inference that the jury might have drawn in its favor. It "cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury." *Mattivi*, 618 F.2d at 167. The district court's examination of the evidence here did not meet this standard.

■ Samuels argued that Local 504 inadequately represented him during the arbitral process thereby breaching its duty of fair representation. *See DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 164–65 & n. 14, 103 S.Ct. 2281, 2290–91 & n. 14, 76 L.Ed.2d 476 (1983). Breach of this duty may be found if the union's conduct was "arbitrary, discriminatory, or in bad faith," *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967), or when it "seriously undermine[d] the arbitral process." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 567, 96 S.Ct. 1048, 1058, 47 L.Ed.2d 231 (1976); *See also Barr v. United Parcel Serv.*, 868 F.2d 36, 43 (2d Cir.), *cert. denied*, 493 U.S. 975, 110 S.Ct. 499, 107 L.Ed.2d 502 (1989).

■ The district court found no proof that the action taken by Pan Am violated the collective bargaining agreement and the evidence did not meet either the *Vaca* or *Hines* tests. We disagree. The entire trial hinged on the jury's assessment of the witnesses' credibility. Samuels presented two witnesses. John Benson was the Senior Shop Steward in 1981 and had been an employee of Pan Am for 25 years. Gerald Collymore was both a union member and, later, a representative of management. His tenure with Pan Am lasted some 30 years. Both were conversant with the provisions of the collective bargaining agreement and testified that Pan Am breached the agreement when Samuels was demoted. Their testimony convinced the jury that the collective bargaining agreement had been violated, despite the fact that the agreement was never entered into evidence.

The union urged that a prior controlling "systems board" determination precluded the Field Board from ruling in Samuels' favor. Its proof of the "systems board" determination was the testimony of a union representative to the Field Board. No copy of the "systems board" determination was presented during discovery or at trial to corroborate this testimony. Further, the Senior Shop Steward Leonard Beaumont, who represented Samuels during the entire grievance procedure, testified that the union represented Samuels because he was "unjustly treated by Pan American World Airways when he was removed from his crew chief status." The grievance was, in other words, meritorious.

The jury reasonably could have found the union failed to investigate and present adequately the grievance because it neglected to discuss the case or possible witnesses with Samuels until the day of the hearing. Moreover, Samuels and his witnesses stated that the union representative merely read an opening statement and asked Samuels one or two questions that were completely unrelated to the substance of the grievance.

■ Samuels was entitled to fair representation by his union before the Field Board. This means an honest, thorough effort to present his claims throughout the arbitral process in a manner best calculated to secure his rights under the collective bargaining agreement. Local 504's presentation to the Field Board, so the jury could believe, fell far short of this standard. The union's representation was a cursory one prepared at the last minute and proffered with an obvious lack of conviction in its merit. The district court was not entitled in these circumstances to substitute its judgment for the jury's determination with respect to the witnesses' credibility.

■ When a union ignores or perfunctorily presses a meritorious claim, it is held to have acted arbitrarily. *See Young v. United States Postal Serv.*, 907 F.2d 305, 308 (2d

Cir.1990); *see also Vaca*, 386 U.S. at 191, 87 S.Ct. at 917; *Lopez v. McLean Trucking Co.*, 798 F.2d 611, 613–14 (2d Cir.1986) (union initially refused to represent member and at hearing failed to make arguments or present a case). Samuels made a *prima facie* case that the union breached its duty of fair representation. No "manifest injustice" to the union occurred because this evidence was sufficient to require the trial court to submit the case to the jury. It was not irrational, given the jury's interpretation of the collective bargaining agreement, for it to conclude that the union's conduct was arbitrary and undermined the arbitral process. However thin the evidence, it was not such that a reasonable jury could reach only one conclusion.

### CONCLUSION

Accordingly, judgment n.o.v. is reversed and the case is remanded to the district court with instructions to vacate that judgment and reinstate the jury verdict.