Carol **DEWING**, Plaintiff,

v.

**ORKIN EXTERMINATING COMPANY, INC.,** d/b/a Orkin Pest Control, Defendant.

No. 93–CV–594.

United States District Court, N.D. New York.

Aug. 25, 1995.

---

Kiley, Feldmann, Whalen (James J. Devine, of counsel), Poughkeepsie, NY, for plaintiff.

Decker & Hallman (Richard P. Decker, of counsel), Atlanta, GA, for defendant.

## MEMORANDUM–DECISION AND ORDER

McAVOY, Chief Judge.

Before the court are two post-trial motions in the above-captioned matter. Defendant Orkin Exterminating asks the Court to set aside the verdict of the jury under Fed. R.Civ.P. 50(b) and renews their motion for judgment as a matter of law under Fed. R.Civ.P. 50(a)(1). Plaintiff Carol Dewing moves under Fed.R.Civ.P. 59(a) for a new trial.

## I. BACKGROUND

Plaintiff claims that on July 8, 1991, defendant negligently applied pesticides at her place of employment, thereby causing her various physical and emotional injuries. Her cause of action came on for trial on May 15, 1995. Defendant moved for judgment as a matter of law both at the close of plaintiff's evidence and at the close of all evidence: the Court reserved on both motions. The jury retired at noon on Friday, May 19, 1995, but reported itself deadlocked at 7:00 p.m. that same evening. The Court gave the jury an *Allen* charge, *Allen v. U.S.*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), and then dismissed the jury for the weekend at their request. Deliberations resumed on May 23, 1995 and after three hours of deliberations the jury rendered a verdict in favor of plaintiff.

### A. Defendant's Motion for Judgment as a Matter of Law:

Defendant Orkin points out that at trial it was plaintiff's burden to prove defendant's negligence through a showing, by a preponderance of the evidence, of the familiar essential elements of negligence: 1) that defendant owed a cognizable duty of care to plaintiff; 2) that the defendant breached that duty; 3) and that plaintiff was damaged as a proximate result of that breach. *See Stagl v. Delta Airlines*, 52 F.3d 463, 467 (2d Cir. 1995). Defendant argues, as it did at trial, that since plaintiff's claims allege a breach by defendant of what is actually a specialized, professional standard of care applicable to defendant as a licensed pest control operator applying a federally regulated commercial pesticide, it was incumbent upon plaintiff to introduce some evidence defining that specialized standard of care. According to defendant, plaintiff's failure to introduce any evidence establishing either the applicable specialized standard or defendant's breach of that standard compels the Court to set aside the jury's verdict and enter judgment as a matter of law in their favor.

### 1. The Standard for Judgment as a Matter of Law:

The Second Circuit has established the standard for granting a judgment as a matter of law. The court in *Mattivi v. South*

*African Marine Corp., "Huguenot"*, 618 F.2d 163 (2d Cir.1980), stated that:

> the trial court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury. Rather, after viewing the evidence in a light most favorable to the non-moving party (giving the non-movant the benefit of all reasonable inferences), the trial court should grant a judgment n.o.v. only when (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him.

*Id.* at 167–68; *see Samuels v. Air Transport Local 504*, 992 F.2d 12, 14 (2d Cir.1993); *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 688–89 (2d Cir.1983).[1] Rule 50 of the Federal Rules of Civil Procedure governs the procedure for granting judgment as a matter of law by motion made before the jury retires, pursuant to Rule 50(a), or motion after the jury has spoken, pursuant to Rule 50(b). Fed.R.Civ.P. 50; *see Samuels*, 992 F.2d at 14.

## 2. The Standard Applied:

One issue that was hotly disputed at trial was the identity of the pesticide which was applied in plaintiff's presence. Defendant maintained, and defendant's service ticket reflected, that only Whitmire 565 plus, a pyrethrin compound, was applied on the date in question. Plaintiff claimed that PT 400 Ultraban, a chlorpyrifos containing compound, was sprayed in her presence: she testified that she was alarmed at the proximity of the pesticide application and affirmatively observed that the can being used was marked "PT 400 ultraban."

Defendant points to the expert testimony of their witness Dr. Douglas Mampe, who testified that three of the four swab samples taken by the New York Department of Environmental Conservation ("NYDEC") four days after the disputed application showed no chlorpyrifos and the fourth showed a minute trace quantity. Defendant's expert opined that the absence of chlorpyrifos on the swabs rendered it scientifically impossible that PT 400 Ultraban was applied on the date in question. Defendant further points to the testimony of *plaintiff's* witness Charles Weiss, a NYDEC chemist, who stated that, barring some clean up of the office, he would have expected to find a substantial presence of chlorpyrifos on the swabs had the application plaintiff described occurs.

■ The short answer is, however, that contrary to defendant's assertions of having conclusively established such facts as to bind the jury to its view, neither Mampe's opinion nor Weiss's testimony established conclusively that PT 400 ultraban was not applied in plaintiff's presence. The jury was free to accept or reject Mampe's expert opinion as to how much chlorpyrifos he believed should have been present four days after application. Furthermore, Weiss's testimony was qualified by whether or not the office had been cleaned or otherwise altered in the intervening period. While defendant's evidence may well have presented a strong case that PT 400 Ultraban was not applied, plaintiff's testimony of her own observations constitutes sufficient evidence from which the jury could have concluded that plaintiff's factual claim that she was indeed exposed to PT 400 Ultraban by defendant's application was true.

■ Defendant also argues that no evidence of the standard of care to be met in applying PT Ultraban 400 was offered. While plaintiff's evidence in this regard was thin indeed, the Court finds that the label on the PT 400 Ultraban, which was offered in evidence and presented to the jury, was sufficient to supply such a standard. At the threshold, both parties agree that "it is a violation of federal law to apply Ultraban in a manner inconsistent with its labeling."

---

1. While the 1991 amendments to Rule 50 abandoned the terms "directed verdict" and "judgment not withstanding the verdict" in favor of the encompassing "judgment as a matter of law" terminology, the standard for granting the motions was not altered. *See* Fed.R.Civ.P. 50 Advisory Committee's note, 1991 Amendment.

(Deft. Memo. of Law at 5). The label of the PT 400 Ultraban which plaintiff claimed was applied at her workplace in her presence reads as follows: "

**DIRECTIONS FOR USE**

. . . .

Cover aquariums and fish bowls and re-move birds from area prior to treating. Treated areas should be vacated during application.[2] OTHER THAN APPLICA-TOR DO NOT PERMIT HUMANS OR PETS TO CONTACT TREATED SUR-FACES UNTIL THE SPRAY HAS DRIED." (Trial Ex. P–6).

The label also contains a cautionary state-ment of practical treatment which advises that "If inhaled: Remove person to fresh air." (Trial Ex. P–6).

The Court finds that the PT 400 Ultraban label is some evidence establishing a stan-dard of care under which application should ideally proceed. As such, thin though it may be, the label is a sufficient evidentiary basis from which the jury could draw a standard of care applicable to their negligence inquiry. The Court likewise finds that based on plain-tiff's testimony, a reasonable jury could have believed that defendant Orkin breached the standard of care established by the label.

Taken together then, the Court finds that there was sufficient evidence from which the jury could have concluded that: Orkin's rep-resentative sprayed PT 400 Ultraban on the day in question; that the instructions and warnings established a specialized standard of care for application of PT 400 Ultraban; and that defendant Orkin breached that stan-dard of care by its application under the circumstances described by plaintiff.

It follows from the foregoing that there was at trial neither such a complete absence of evidence supporting the verdict that the jury's findings must have been the result of sheer surmise and conjecture, nor such an overwhelming amount of evidence in favor of the defendant that a reasonable jury could not have arrived at a verdict against it. As such, defendant's motion for judgment as a matter of law is DENIED.

**B. Plaintiff's Motion For a New Trial:**

Plaintiff has moved for a new trial under Rule 59(a), claiming that because the jury awarded plaintiff only past damages without awarding future damages, the jury's verdict is incomplete and against the clear weight of the credible evidence.

**1. The Standard Under Rule 59:**

■ A less stringent standard applies to a motion to set aside the verdict and for a new trial pursuant to Rule 59(a). "A trial court should grant such a motion when convinced that the jury has reached a seriously errone-ous result or the verdict is a miscarriage of justice." *Katara v. D.E. Jones Commodities, Inc.,* 835 F.2d 966, 970 (2d Cir.1987); *see Newmont Mines Ltd. v. Hanover Ins. Co.,* 784 F.2d 127, 132 (2d Cir.1986). A trial judges's disagreement with the jury's verdict alone, however, is insufficient reason to grant the motion for a new trial. *Mallis,* 717 F.2d at 691; *see Saloomey v. Jeppesen & Co.,* 707 F.2d 671, 679 (2d Cir.1983). It is in light of this standard that the Court examines plain-tiff's motion for a new trial.

**2. The Standard Applied:**

Plaintiff points to the medical testimony of Dr. Arjun Patel, M.D., and Dr. Jerome Blu-menthal, a certified psychiatrist, both of whom testified that as a result of the incident plaintiff's injuries are permanent, that she will require medical care continuing into the future, and that she will continue to be total-ly disabled from employment permanently. Plaintiff also points to the testimony of her economist, Jerry Miner, Ph.D. who testified to plaintiff's past and future lost wages and the cost of future medical care. Plaintiff notes that the jury directly adopted Miner's calculations as to plaintiff's past lost wages and made plaintiff an award of those past lost wages, as well as an award for plaintiff's past medical expenses and past pain and suffering, but failed to award plaintiff any-thing for future lost wages, pain and suffer-ing and medical expenses. Plaintiff argues

---

**2.** The Material Safety Data Sheet describing PT 400 Ultraban accompanying plaintiff's exhibit

also indicates that "treated area should be vacat-ed during application." (Trial Ex. P–7 at 4).

that in the absence of contrary medical testimony the jury could not have concluded that plaintiff suffered damages up to the date of verdict but no damages beyond that date. She argues that since the defendant's entire theory was that plaintiff suffered no injury from defendant's actions, and since there was no evidence that plaintiff's injuries had resolved, the jury's verdict awarding only past damages is incomplete, contrary to the weight of the evidence, and unjust.

■ The Court finds, however, that the jury's verdict is neither incomplete, against the weight of the credible evidence, or unjust. As defendant Orkin points out "it does not follow that simply because a jury finds one witness to be generally believable, it will resolve all factual disputes in accordance with the testimony of that witness." *Justice v. Hoke,* 45 F.3d 33, 35 (2d Cir.1995). The jury was perfectly free to accept the testimony of Patel and Blumenthal as to plaintiff's past injuries and damages while rejecting their conclusions as to the permanency of plaintiff's condition. This is particularly true where, as here, during plaintiff's testimony the jury could assess her condition (both physical and emotional), and her credibility for itself. Furthermore, plaintiff was extensively cross-examined about her current life style generally and various activities in particular. Finally, the testimony of defendant's witness Dr. Michael Wernke, a toxicologist and pharmacologist, supplied some evidentiary basis for the fact-finder to conclude that exposure to the pesticides in question would not cause on-going harm.

■ In short then, plaintiff's motion turns primarily on the jury's assessment of the credibility of her own testimony and the testimony of competing expert witnesses. Such fact-finding is uniquely within the province of the jury, *see Piesco v. City of New York,* 12 F.3d 332, 345 (2d Cir.1993); *Metromedia Co. v. Fugazy,* 983 F.2d 350, 363 (2d Cir.1992), and upon examination of the record the Court finds no other basis upon which to conclude that the jury's verdict was either seriously erroneous or a miscarriage of justice. *See Katara,* 835 F.2d at 970. As such, plaintiff's motion for a new trial is hereby DENIED.

## III. CONCLUSION

For all the foregoing reasons both defendant's Rule 50 motion for judgment as a matter of law and plaintiff's Rule 59 motion for a new trial are hereby DENIED.

**IT IS SO ORDERED.**