11-3865-cv(L)
Izzarelli v. R.J. Reynolds Tobacco Co.

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of July, two thousand seventeen.

PRESENT: DENNIS JACOBS,
        JOSÉ A. CABRANES,
        RICHARD C. WESLEY,
           Circuit Judges.

- - - - - - - - - - - - - - - - - - - - - - - - -X
BARBARA A. IZZARELLI,
        Plaintiff-Appellee-Cross-Appellant,

        -v.-                 11-3865
                                 11-3890

R.J. REYNOLDS TOBACCO COMPANY,
        Defendant-Appellant-Cross-Appellee.

- - - - - - - - - - - - - - - - - - - - - - - - -X

FOR DEFENDANT-APPELLANT:      Mark R. Seiden, Theodore M. Grossman, Todd R. Geremia, David M. Cooper, Victoria Dorfman, Mark A. Belasic, Jones Day, New York, NY.

**FOR PLAINTIFF-APPELLEE:**               David S. Golub, Jonathan M.
                                          Levine, Marilyn J. Ramos,
                                          Silver Golub & Teitell LP,
                                          Stamford, CT.

Appeal from a judgment of the United States District Court for the District of Connecticut (Underhill, <u>J.</u>).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court is **AFFIRMED** in part and, in part, **VACATED** and **REMANDED**.

Barbara Izzarelli sues R.J. Reynolds Tobacco Company ("R.J. Reynolds") under the Connecticut Products Liability Act ("CPLA"), Conn. Gen. Stat. § 52-572m <u>et seq.</u>, for strict liability and negligence, claiming that the particular brand of cigarette she smoked for twenty-five years (Salem Kings) was defectively designed and caused her laryngeal cancer.[1] A jury agreed, finding R.J. Reynolds liable (and 58 percent at fault) under theories of strict liability and negligence, and awarded Izzarelli compensatory damages of $7,982,250 plus punitive damages, which the district court set at $3,970,289.87 (the amount of her litigation expenses less taxable costs).[2] The United States District Court for the District of Connecticut (Underhill, <u>J.</u>) denied R.J. Reynolds's post-trial motion for judgment as a matter of law or for a new trial, and entered judgment in Izzarelli's favor. R.J. Reynolds appeals the

---

[1] Izzarelli also brought a claim under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a <u>et seq.</u>, for unlawful youth marketing. The district court dismissed the claim on summary judgment, and Izzarelli does not appeal that decision.

[2] The district court also awarded $16,127,086.40 in offer-of-judgment interest. <u>See generally</u> <u>Elgard Corp. v. Brennan Constr. Co.</u>, 388 F.3d 30, 36 (2d Cir. 2004) ("explaining that "[t]he purpose of [Connecticut's offer-of-judgment statute, Conn. Gen. Stat. § 52-192a,] is to conserve judicial resources by encouraging fair and reasonable compromise between litigants and by penalizing a party that fails to accept a reasonable offer of settlement" (internal quotation marks omitted)).

2

judgment on various grounds. Izzarelli cross-appeals the district court's ruling limiting punitive damages to litigation expenses less taxable costs. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

This is the second occasion on which we are called upon to consider this appeal. When the appeal was originally heard in 2013, R.J. Reynolds argued principally that Izzarelli's claims were barred by the rule "re-stated" in the Restatement (Second) of Torts § 402A. Because this threshold issue was undecided under Connecticut law, we certified the following question to the Connecticut Supreme Court:

> Does Comment i to section 402A of the Restatement (Second) of Torts preclude a suit premised on strict products liability against a cigarette manufacturer based on evidence that the defendant purposefully manufactured cigarettes to increase daily consumption without regard to the resultant increase in exposure to carcinogens, but in the absence of evidence of any adulteration or contamination?

Izzarelli v. R.J. Reynolds Tobacco Co., 731 F.3d 164, 169 (2d Cir. 2013). The Connecticut Supreme Court answered the question in the negative and clarified Connecticut law regarding strict liability. See Izzarelli v. R.J. Reynolds Tobacco Co., 321 Conn. 172, 211 (2016).

Two other questions that bear on this appeal were certified to the Connecticut Supreme Court in a companion case, Bifolck v. Philip Morris, Inc.:

> 1. Does § 402A of the Restatement (Second) of Torts (and Comment i to that provision) apply to a product liability claim for negligence under the CPLA?
>
> 2. Does Connecticut's common law rule [limiting] punitive damages [to litigation expenses less taxable costs] . . . apply to an award of statutory punitive damages pursuant to Conn. Gen. Stat. § 52-240b, the punitive damages provision of the CPLA?

3

No. 3:06CV1768 (SRU), 2014 WL 585325, at *8, 2014 U.S. Dist. LEXIS 18797, at *22 (D. Conn. Feb. 14, 2014). In a thorough opinion articulating the standards that govern product liability claims in Connecticut, the Supreme Court answered "No" to both questions. See Bifolck v. Philip Morris, Inc., 324 Conn. 402, 408 (2016).

As the parties acknowledge, the rulings in Izzarelli and Bifolck, inter alia: (1) foreclose R.J. Reynolds's argument that the Restatement (Second) of Torts § 402A, as interpreted by Connecticut's highest court, bars Izzarelli's claims; and (2) confirm Izzarelli's contention that the district court incorrectly limited punitive damages to litigation expenses less taxable costs. However, those rulings do not dispose of this appeal. Remaining are R.J. Reynolds's arguments that: (1) erroneous evidentiary rulings and jury instructions require a new trial; (2) R.J. Reynolds is entitled to judgment as a matter of law because Izzarelli failed to prove that a defect in Salem King cigarettes caused her cancer; and (3) Izzarelli's claims are preempted by federal law because they amount to a ban on cigarettes.

## A. Motion for New Trial

R.J. Reynolds contends that flawed evidentiary rulings and jury instructions warrant a new trial, and that the district court erred by refusing to grant one. "We review the district court's denial of a motion for a new trial for abuse of discretion." Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc., 290 F.3d 98, 106 (2d Cir. 2002). "A motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." Hugo Boss Fashions, Inc. v. Fed. Ins. Co., 252 F.3d 608, 623 (2d Cir. 2001) (internal quotation marks omitted). "In reviewing the district court's decision, we must view the evidence in the light most favorable to the nonmoving party." Medforms, 290 F.3d at 106 (internal quotation marks omitted).

For the reasons discussed below, the district court did not "abuse its discretion" (that is, err) in denying R.J. Reynolds's motion for a new trial. See generally United States v. Park,

4

758 F.3d 193, 199-200 (2d Cir. 2014) (per curiam) (explaining the term of art "abuse of discretion").

## 1. Evidentiary Rulings

### i. Risk Factors

R.J. Reynolds proffered evidence that Izzarelli's laryngeal cancer could have been caused by factors other than smoking. These "risk factors" included human papilloma virus ("HPV"), drug use, alcohol consumption, acid reflux, and family and personal history of non-laryngeal cancer. Except for HPV, the district court precluded R.J. Reynolds from introducing evidence and conducting cross-examination regarding all of these factors. The court permitted R.J. Reynolds to offer testimony and documentary evidence that HPV can cause laryngeal cancer, but refused to admit the results of a test that, according to R.J. Reynolds, suggested that HPV caused Izzarelli's cancer. R.J. Reynolds contends that these rulings were improper.

A district court is accorded broad discretion in admitting or excluding evidence and in controlling the scope of cross-examination, and we review its decisions in these areas for abuse of discretion. See Cameron v. City of N.Y., 598 F.3d 50, 61 (2d Cir. 2010); United States v. Wilkerson, 361 F.3d 717, 734 (2d Cir. 2004). We identify no such abuse here. The record -- including admissions by R.J. Reynolds's experts -- amply supports the district court's conclusion that HPV was the only proffered risk factor that was arguably shown to cause laryngeal cancer. It was therefore not unreasonable to find that whatever relevance the other factors possessed was substantially outweighed by the danger of confusion and unfair prejudice.

The district court similarly exercised sound discretion in excluding evidence that Izzarelli's tumor tested positive for "p16," an antibody that can indicate the presence of HPV. Because the tumor tested negative for HPV itself -- and R.J. Reynolds did not demonstrate that this test was inaccurate -- it was not error to rule that the positive p16 test was irrelevant.

## ii.  Youth Marketing

R.J. Reynolds argues that the district court erred by admitting evidence of its marketing research and campaigns directed at minors.  The district court found that the relevance of this evidence was not substantially outweighed by the prejudicial impact.  "Unless a district court's determination of relevance is arbitrary or irrational, it will not be overturned."  United States v. LaFlam, 369 F.3d 153, 155 (2d Cir. 2004) (per curiam) (internal quotation marks omitted).  "Because the district court retains broad discretion to weigh potential prejudice against probative value, appellate courts reviewing a district court's evaluation of evidence under Federal Rule of Evidence 403 generally maximize its probative value and minimize its prejudicial effect."  Id. (internal quotation marks omitted).

There are several reasons why evidence of R.J. Reynolds's youth marketing was relevant to Izzarelli's case.  First, it supported Izzarelli's claim that Salem Kings were uniquely designed to contain, inter alia, nicotine levels that were just high enough to cause and maintain addiction but low enough to induce frequent smoking (and thus elevated exposure to carcinogens), and an ingredient blend that provided enhanced flavor (and thus more carcinogenic tar).  Izzarelli, who started smoking Salem Kings at age 12, demonstrated that this design was adopted in part to attract young, new smokers, who disliked the bitterness of nicotine and preferred flavorful cigarettes.

Second, the youth marketing evidence indicated that minors -- who compose the bulk of new smokers and have strong brand loyalty -- were Salem Kings' target demographic.  This is relevant because consumer expectation is a factor in determining strict liability.[3]  See Bifolck, 324 Conn. at 435

---

[3] Consumer expectation is the dispositive factor under the "ordinary consumer expectation" test, which R.J. Reynolds argued at trial (and on appeal) was applicable to Izzarelli's strict liability claim.  However, the Connecticut Supreme Court ruled that the risk-utility test (previously called the "modified consumer expectation" test) is the only test

(explaining that, under risk-utility test, "a jury may consider . . . the nature and strength of consumer expectations regarding the product, including expectations arising from product portrayal and marketing"); id. at n.18 ("The reasonable consumer standard in relation to a manifestly unreasonable design refers to the consumer to whom the product is marketed."); Izzarelli, 321 Conn. at 208-10 (noting the relevance of consumer expectations to strict liability). Evidence that R.J. Reynolds targeted minors, who (the record indicates) have a diminished appreciation for the risks of smoking, therefore strengthened Izzarelli's strict liability claim.

Third, revealing the identity and preferences of Salem King consumers informed the jury's understanding of the utility of the product, which is critical to the governing risk-utility test.

Fourth, the evidence had bearing on whether and how R.J. Reynolds manipulated Salem King ingredients, and whether the company was aware of the health risks posed by those ingredients. Thus, internal marketing memoranda helped establish R.J. Reynolds's "actual or imputed knowledge of the danger," which "is an essential element of negligence." Bifolck, 324 Conn. at 443.

Fifth, internal marketing memoranda were also relevant to the issue of punitive damages, which "may be awarded if the claimant proves that the harm suffered was the result of the product seller's reckless disregard for the safety of product users, consumers or others who were injured by the product." Conn. Gen. Stat. § 52-240b. Documents showing the decisions that led to a dangerous design are probative of a manufacturer's reckless disregard for consumer safety.

Finally, the youth marketing evidence is relevant to R.J. Reynolds's defense of comparative fault. In assessing Izzarelli's responsibility for her cancer, the jury was entitled to consider R.J. Reynolds's research regarding why minors choose to smoke and its belief that minors fail to fully appreciate the risks of smoking.

applicable to that claim. See Izzarelli, 321 Conn. at 203.

7

These relevancy considerations were offsets to the undoubtedly prejudicial evidence of youth marketing. The weighing was for the district court to do, and we cannot say the rulings constituted an abuse of discretion.

## 2. Jury Instructions

R.J. Reynolds contends that the Connecticut Supreme Court, in Izzarelli and Bifolck, invalidated the jury instructions regarding product liability. However, the Connecticut Supreme Court did so only with respect to the instructions on strict liability: it explained that one of the strict liability tests presented to the jury (the "ordinary consumer expectation" test, for which *R.J. Reynolds* advocated) is inapplicable in this case. See Izzarelli, 321 Conn. at 203. With respect to negligence, the Connecticut Supreme Court confirmed that such claims are governed by the traditional common-law elements on which the jury was properly instructed. See Bifolck, 324 Conn. at 442-43. Because the jury returned a separate verdict for Izzarelli on her negligence claim, which is undisturbed by Izzarelli and Bifolck, the possible flaw in the strict liability verdict is irrelevant.

## B. Motion for Judgment as a Matter of Law

R.J. Reynolds argues that Izzarelli failed to prove that the purported defect in Salem Kings caused her cancer, and that the district court erred by not granting R.J. Reynolds's motion for judgment as a matter of law on this basis. We review the denial of a motion for judgment as a matter of law de novo, "applying the same standards as the district court to determine whether judgment as a matter of law was appropriate." Merrill Lynch Interfunding, Inc. v. Argenti, 155 F.3d 113, 120 (2d Cir. 1998). Judgment as a matter of law is appropriate if, after reviewing the evidence in the light most favorable to Izzarelli, the nonmovant, "there can be but one conclusion as to the verdict that reasonable [jurors] could have reached." Samuels v. Air Transp. Local 504, 992 F.2d 12, 14 (2d Cir. 1993) (internal quotation marks omitted). Relief is warranted "only where there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or there is such an

8

overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against [it]." Bucalo v. Shelter Island Union Free Sch. Dist., 691 F.3d 119, 127-28 (2d Cir. 2012) (internal quotation marks omitted).

There was evidence sufficient to support the jury's finding that the particular blend of ingredients in Salem Kings caused Izzarelli's laryngeal cancer. Izzarelli adduced evidence that: (1) Salem Kings delivered a level of nicotine (along with a chemically-enhanced "kick") that provoked initial addiction and stimulated the need to smoke frequently; (2) Salem Kings contained a significant amount of carcinogenic tar; (3) the more carcinogens a smoker is exposed to, the more likely laryngeal cancer will develop; and (4) Izzarelli smoked two to three packs of Salem Kings a day for 25 years. Izzarelli also adduced evidence that R.J. Reynolds could have made Salem Kings safer by taking any of the following steps: (1) decreasing the nicotine yield to below-addiction levels; (2) increasing the nicotine yield to levels that satisfied addiction with fewer cigarettes; or (3) decreasing the level of tar.

Thus, in sum, a rational jury could have found from the evidence presented at trial that Salem Kings had an unreasonably dangerous design that caused Izzarelli's laryngeal cancer.

C.  **Preemption**

R.J. Reynolds asserts that Izzarelli's theory of liability "amounts to a ban on all cigarettes sold in Connecticut," Def.'s Opening Br. 27, and, as such, is preempted by federal law. We need not address this argument on the merits because we disagree with its premise. Izzarelli's theory at trial was that Salem Kings -- with their particular blend of addictive and carcinogenic ingredients -- are unreasonably dangerous, not that cigarettes in general are. And the jury was twice properly instructed that R.J. Reynolds could not be held liable merely because Salem Kings contained nicotine and carcinogens. Therefore, because Izzarelli's claims were focused on characteristics of the brand that were not common to cigarettes in general, R.J. Reynolds's preemption argument fails.

9

## CONCLUSION

For the foregoing reasons, we hereby **AFFIRM** the judgment of the district court as to liability but **VACATE** and **REMAND** for a redetermination of punitive damages in light of the Connecticut Supreme Court's holding in <u>Bifolck</u>.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK