**DEEPWELLS ESTATES INC. and Nicholas Petervary, Plaintiffs,**

v.

**INCORPORATED VILLAGE OF HEAD OF THE HARBOR, Edward W. Hoffman, Daniel J. Shybunko, Glen G. Williams, Barbara Van Liew, David Sayre, Frank Zingale, Marie D. Wiese, each in their individual capacities and in their official capacities as members of the Board of Trustees of the Incorporated Village of Head of the Harbor and William C. Miller and Richard Wiedersum, both in their individual capacities and as Chairman of the Planning Board of the Incorporated Village of Head of the Harbor, Helen Kycia, in her individ-**ual capacity and as Chairman of the Architecture Board, and Jerry Harris, in his individual capacity and as Building Inspector for the Incorporated Village of Head of the Harbor and Other Unknown Defendants, Defendants.**

**No. CV–96–5879 (ADS).**

United States District Court, E.D. New York.

Aug. 16, 1997.

Weinberg & Kert, LLP, Garden City, NY (Arnold Kert, Alan C. Stein, of counsel), for Plaintiffs Deepwells Estates Inc. and Nicholas Petervary.

Certilman, Balin, Adler & Hyman, LLP, East Meadow, NY (Neil H. Angel, Robert J. Ciovacco, of counsel), for Defendants Incorporated Village of Head of the Harbor, Edward W. Hoffman, Daniel J. Shybunko, Glen G. Williams, Barbara Van Liew, David Sayre, Frank Zingale, Marie D. Wiese, William C. Miller, Richard Wiedersum, Helen Kycia and Jerry Harris.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

This action arises from the claims of the plaintiffs, Nicholas Petervary ("Petervary") and his real estate developing company, Deepwells Estates Inc. ("Deepwells", collectively, the "plaintiffs"), pursuant to 42 U.S.C. §§ 1983 and 1985, that the defendants, the Incorporated Village of Head of the Harbor (the "Village"), and various officials and board members of the Village, in their individual and official capacities (collectively, the "defendants"), discriminated against the plaintiffs and caused the taking of Petervary's property without just compensation, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States. In addition, the plaintiffs allege deprivation of their property rights without due process, in violation of the Fourteenth Amendment. Presently before the Court is the defendants' motion to dismiss the plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted.

## I. BACKGROUND

According to the complaint, the plaintiffs commissioned an engineer to draft a set of plans and a map which conformed to the zoning requirements of the Village. In July 1986, Petervary submitted a building application to the Village in order to build a subdivision of exclusive homes. Thereafter, in 1986, Petervary purchased a tract of land, consisting of 31.55 acres located within the Village which he and his corporation, Deepwells, intended to develop. In order to purchase the property, Petervary obtained a $1.3 million mortgage from the European American Bank. The relevant zoning requirements have not changed since the submission of the application. Upon information and belief, the building application has never been approved or denied.

Further, according to the complaint, after the passage of more than six years during which time the Village requested many verbal and a few written requests for modifications of the submitted plans, a meeting was held on February 28, 1992, in the basement of the house of the then Mayor, Edward W. Hoffman ("Hoffman"), which at that time was being utilized as the Village Hall. At this meeting attended by Petervary, Hoffman, and the Chairman of the Planning Board, William C. Miller ("Miller"), Petervary was advised that the Village was aware of his poor financial condition resulting from the large mortgage on his property. An ultimatum was then issued by the Village. Petervary was to convey to the Village approximately 4.68 acres of certain land and the small building which stood on that property, for no compensation and on Hoffman's terms, or Petervary could wait until "the cows come home to get an approval on the subdivision map." The Village agreed to waive a small amount of application fees in exchange for this coerced donation. At this meeting, Miller allegedly stated that Petervary had no choice and should comply with Hoffman's demands.

After several months of stalling, during which time he was harassed by the Village and by its police department, Petervary delivered the requested deed for the 4.68 acres of land, which included the building, to the Village. The deed was ultimately accepted by the Village in or about August 1992 and recorded on September 10, 1992.

In or about August 1993, the Village approved and filed its own proposed map (the "Village map") which provided for twenty-six mismatched lots ranging in size from one-half acre to six acres each, rather than the subdivision map proposed by Petervary which delineated twenty-seven evenly spaced lots comprising of one or two acres each. Shortly thereafter, the Village built a Village Hall on the 4.68 acres of land received from Petervary and utilized the remainder of the property for municipal purposes.

On May 19, 1993, Petervary signed the Village map. Subsequently, a representative of the defendants allegedly appended the following paragraph to the Village map without Petervary's consent:

"IN ORDER TO INSURE A STRONG VISUAL BUFFER ALONG ROUTE 25 A (NORTH COUNTRY ROAD) THE 200 FT. SETBACK SHALL BE LEFT IN ITS NATURAL STATE IN PERPETUITY. THERE SHALL BE NO CLEARING TRIMMING OR GENERAL MAINTENANCE OF TREES BUSHES OR UNDERGROWTH OF THIS AREA."

The plaintiff did not learn of the above additional paragraph to the Village map until the beginning of 1994.

During 1993, the Village demanded that Petervary grant the Village an additional parcel of land adjacent to the parcel conveyed to the Village in 1992. The plaintiffs attempted to stall the Village for several months. However, the Village refused to approve the framing, plumbing and insulation of these homes until Petervary orally promised to convey the additional parcel of property.

Petervary attempted to avoid the transfer of this additional parcel, but after months of harassment by the Village and by its police department, he relented and transferred said second deed dated April 2, 1993, to the Village. On or after December 4, 1993, the Village, without further inspection, approved the plumbing and insulation of these homes.

Subsequent to the acceptance of the second deed, the plaintiffs received "a small hiatus from the harassment" during which time the Village approved the certificates of occupancy on seven homes. Thereafter, the Village placed a moratorium on the plaintiffs' property by "demanding the impossible" and refused to issue any other certificates of occupancy.

During these years the plaintiffs were allegedly harassed by various Village officials. Helen Kycia ("Kycia"), the chairman of the Architecture Board, allegedly used her position to harass the plaintiffs into making unnecessary changes on the homes built by the plaintiffs, attempted to require the plaintiffs to perform illegal tasks for which they were not bonded and attempted to require the plaintiffs to make changes to homes which were built and were being occupied. Kycia was motivated by her alleged desire to increase the value of her own property, which was located less than one mile from the plaintiffs' property and was to be developed. Richard Wiedersum ("Wiedersum"), the Chairman of the Planning Board, harassed the plaintiffs by requesting that they perform impossible tasks within unreasonable time constraints and by placing a moratorium on the grants of certificates of occupancy on the plaintiffs' property for over one and one-half years. Jerry Harris ("Harris"), the Building Inspector appointed by the Village, failed to approve work in progress and failed to inspect the homes being constructed by the plaintiffs during the moratorium, although all relevant requirements set forth by the Village were satisfied. Glen G. Williams ("Williams"), Barbara Van Liew ("Liew"), David Sayre ("Sayre"), Daniel J. Shybunko ("Shybunko"), Frank Zingale ("Zingale") and Marie D. Weiss ("Weiss"), all Trustees of the Village, furthered the conspiracies of Hoffman and Miller by: (1) causing unnecessary delays to the approval or denial of the plaintiffs' building applications; (2) taking private property without payment of just compensation; (3) requiring illegal tasks to be performed by the plaintiffs; and (4) placing a moratorium on the plaintiffs' property which was not promptly removed upon the plaintiffs' successful completion of the tasks requested.

During November 1996, Shybunko, the present Mayor of the Village, verbally requested the "donation" of another 1.09 acres to the Village. This request occurred contemporaneously with the Village's agreement to inspect two homes for certificates of occupancy for the first time in over one and one-half years. Concurrent with Petervary's refusal to deed the property to the Village, his certificates of occupancy were denied upon inspection on November 23, 1996.

The plaintiffs allege four causes of action, which are as follows:

1. The defendants coerced the involuntary transfer of two separate lots of property

without just compensation, in violation of the Fifth and Fourteenth Amendments, and deprived the plaintiffs of procedural and substantive due process;

2. The defendants, acting under color of law, engaged in a concerted course of conduct to deprive the plaintiffs of his Constitutional and Civil Rights by attempting to, and taking, the plaintiffs' property for public use without just compensation and delaying the approval or denial of the plaintiffs' building application;

3. The defendants, collectively and individually, were negligent in failing to either approve or deny the plaintiffs' building application in a timely manner, negligently cluster zoning the subdivision and negligently deprived the plaintiffs of their Constitutional and Civil Rights; and

4. The Village and the individual defendants, in their official and individual capacity, are liable to the plaintiffs for punitive damages.

## II. DISCUSSION

### A. *Fed R. Civ. P. 12(b)(6) standard*

On a motion to dismiss for failure to state a claim, "the court should not dismiss the complaint pursuant to Rule 12(b)(6) unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'". *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir. 1985) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *see also IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1052–53 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994). The Second Circuit stated that in deciding a Rule 12(b)(6) motion, a court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504,* 992 F.2d 12, 15 (2d Cir.1993); *see also Paulemon v. Tobin,* 30 F.3d 307, 308–09 (2d Cir.1994); *Rent Stabilization Ass'n of the City of New York v.*

*Dinkins,* 5 F.3d 591, 593–94 (2d Cir.1993) (citing *Samuels,* 992 F.2d at 15).

It is not the Court's function to weigh the evidence that might be presented at a trial; the Court must merely determine whether the complaint itself is legally sufficient, *see Goldman,* 754 F.2d at 1067, and in doing so, it is well settled that the Court must accept the allegations of the complaint as true, *see Leeds v. Meltz,* 85 F.3d 51 (2d Cir.1996); *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991); *Procter & Gamble Co. v. Big Apple Indus. Bldgs. Inc.,* 879 F.2d 10, 14 (2d Cir.1989), *cert. denied,* 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990), and construe all reasonable inferences in favor of the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Leeds, supra,* 85 F.3d at 51; *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1099 (2d Cir.1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

The Court is mindful that under the modern rules of pleading, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief", Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice," Fed.R.Civ.P. 8(f).

The issue before the Court on a Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claim." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995), *cert. denied* —— U.S. ——, 117 S.Ct. 50, 136 L.Ed.2d 14 (1996) (citing *Scheuer, supra,* 416 U.S. at 235–36, 94 S.Ct. at 1686). Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal under Rule 12(b)(6). *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (citing *Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686).

The Court notes that the defendants have submitted a copy of an Agreement by and between the Village, Petervary and the European American Bank, dated August 27, 1992, which establishes that the second parcel of property was conveyed to the Village temporarily as security in lieu of the posting of a performance bond in the amount of

$392,261.40. *See* Notice of Motion, Exhibit 1. The defendants have also submitted a copy of a Declaration by Petervary dated January 22, 1993 which the defendants maintain conclusively establishes that Petervary knew of, and agreed to, the additional requirement for the Route 25A scenic buffer before December 3, 1993. *See* Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Complaint, Exhibit 3. The Second Circuit has stated that in deciding a Rule 12(b)(6) motion, a court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels, supra; see also Paulemon, supra; Dinkins, supra.* These two documents were not attached as exhibits to the complaint, incorporated by reference in the pleadings, nor can the Court take judicial notice of such documents. Pursuant to Fed.R.Civ.P. 12(b), the Court declines to convert the defendants' motion to dismiss into a motion for summary judgment. Consequently, the Court excludes from its consideration the evidentiary weight of these documents.

It is within this framework that the Court addresses the present motion to dismiss.

B. *Standing*

■ One of the constitutional requirements for standing is that a party "show he personally has suffered some actual or threatened injury." *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). According to the complaint and the exhibits attached thereto, the property located in the Village is owned by Petervary. Unable to decipher from the complaint Deepwells' alleged injury, the Court inquired of the plaintiffs during oral argument, the nature of Deepwells' standing to bring this action. The Court directed the plaintiffs to investigate this issue and advise the Court as to whether Deepwells would withdraw as a plaintiff.

C. *First Cause of Action*

■ The defendants move to dismiss the first cause of action, wherein the plaintiffs allege inverse condemnation and denial of due process, claiming that it is barred by the statute of limitations and/or that the action fails to state a claim upon which relief can be granted. An inverse condemnation claim under the Fifth Amendment, as made applicable to the States through the Fourteenth Amendment, *see First English Evangelical Lutheran Church v. Los Angeles County,* 482 U.S. 304, 307–09, 107 S.Ct. 2378, 2382, 96 L.Ed.2d 250 (1987), is predicated on the proposition that a Fifth Amendment "taking" may occur even though there has been no formal exercise of the government's eminent domain power. An inverse condemnation suit is the manner in which a landowner recovers just compensation for a taking of his property where there has been no formal condemnation proceeding. *United States v. Clarke,* 445 U.S. 253, 257, 100 S.Ct. 1127, 1130, 63 L.Ed.2d 373 (1980).

i. *Statute of Limitations*

■ Since 42 U.S.C. § 1983 ("Section 1983") does not contain a statute of limitations, a federal court applies the period of limitations of the state in which the action is brought. *Wilson v. Garcia,* 471 U.S. 261, 268–69, 105 S.Ct. 1938, 1942–43, 85 L.Ed.2d 254 (1985). In *Wilson,* the Supreme Court held that for the purpose of selecting the proper state limitations period, all Section 1983 actions should be characterized as actions for personal injuries. *Id.* at 268–69, 105 S.Ct. at 1942–43. As a result, a federal court must adopt the state limitations period applicable to personal injury actions.

■■ Pursuant to N.Y. C.P.L.R. 214(2), the appropriate statute of limitations period is three years for "an action to recover upon a liability, penalty or forfeiture created or imposed by statute." *See Owens v. Okure,* 488 U.S. 235, 249–51, 109 S.Ct. 573, 582, 102 L.Ed.2d 594 (1989); *see also Murphy v. Lynn,* 53 F.3d 547, 549 (2d Cir.1995); *423 South Salina Street, Inc. v. City of Syracuse,* 68 N.Y.2d 474, 503 N.E.2d 63, 510 N.Y.S.2d 507, *cert. denied,* 481 U.S. 1008, 107 S.Ct. 1880, 95 L.Ed.2d 488 (1987). While New York law is applied to determine the applicable limitations period and its tolling, if any,

federal law governs to ascertain when a cause of action under Section 1983 accrues. *Leonhard v. United States,* 633 F.2d 599, 613 (2d Cir.1980), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981); *Eagleston v. Guido,* 41 F.3d 865 (2d Cir.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 53, 133 L.Ed.2d 18 (1995). An action accrues when the plaintiffs know, or has reason to know, of the injury that is the basis of the action. *Barrett v. United States,* 689 F.2d 324, 333 (2d Cir.1982), *cert. denied,* 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983).

 The plaintiffs commenced this action on December 3, 1996. Barring any applicable tolling of the statute of limitations, the plaintiffs may recover for only those claims which arose on or after December 3, 1993. Therefore, barring any applicable tolling theories, any claims arising from the following factual allegations are time barred:

1. The February 28, 1992 meeting during which Petervary was allegedly issued an ultimatum to convey one parcel of his subdivision as a condition precedent to obtaining approval for the subdivision map;

2. The conveyance of the property in or about August 1992, which was recorded on September 10, 1992; and

3. The approval of the plaintiffs' building application and the filing by the Village of the Village map in August 1993, for a different subdivision scheme from that which was proposed by the plaintiffs.

In addition, according to the plaintiffs, the second property conveyance to the Village occurred within the applicable three-year statute of limitations. Petervary conveyed the second parcel of property to the Village by a deed dated April 2, 1993. However, the defendants allegedly did not officially accept this deed until December 4, 1993, and it was not recorded until sometime thereafter. Based on the dates of recording, the plaintiffs contend that the conveyance of the second parcel of property was within the three-year statute of limitations period.

 The Court finds that the recording of the deed is irrelevant to the issue of statute of limitations. N.Y. Real Prop. Law § 244 (McKinney 1989) provides as follows:

A grant takes effect, so as to vest the estate or interest intended to be conveyed, only from its delivery; and all the rules of law, now in force, in respect to the delivery of deeds, apply to grants hereafter executed.

Therefore, a deed must be delivered to effect the transfer of title. *See 219 Broadway Corp. v. Alexander's, Inc.,* 46 N.Y.2d 506, 414 N.Y.S.2d 889, 892, 387 N.E.2d 1205, 1207–08 (1979). Recording is not a requirement for the transference of title. The recording of a deed is important for the purpose of determining whether two or more competing deeds have priority. *See* N.Y. Real Prop. Law § 291, *et seq.* Although the deed to the second parcel of property to the Village is dated April 2, 1993, the plaintiffs maintain that the defendants "did not officially accept this deed until December 4, 1993." *See* Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Opp.Mem.") at 4. The complaint alleges that "[u]pon acceptance of the [second] deed, on December 4, 1993, the VILLAGE without further inspection, approved the plumbing and insulation on these homes." Complaint ¶ 37. The Court finds that this allegation is susceptible to the following two interpretations: (1) the Village accepted the deed on December 4, 1993; or (2) the Village approved the plumbing and insulation of the homes on December 4, 1993. Therefore, the Court is unable to discern whether the deed to the second parcel was delivered to the Village on or after December 3, 1993 and, hence, whether the plaintiffs' claim arising from this second deed falls within the three-year statute of limitations. Regardless, the plaintiffs maintain that all of the above claims are timely brought pursuant to the continuing violation theory.

Claimants seeking relief pursuant to Section 1983 and other civil rights statutes, especially Title VII, frequently attempt to escape the grasp of the statute of limitations by alleging that their claims constitute a "continuing violation." Relatively few of these arguments are successful. *See Lorance v. AT & T Technologies,* 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989) (continuing violation theory rejected in Title VII case); *De-*

laware State College v. Ricks, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); Taylor v. Bunge, 775 F.2d 617, 619 (5th Cir.1985) ("termination of employment . . . is not a continuing violation because the individual ceases to be an employee on the date of his discharge and all of his legal claims mature at that time"). The courts have had difficulty defining what a continuing violation is, resulting in case law that is "inconsistent and confusing." See Glass v. Petro–Tex Chem. Corp., 757 F.2d 1554, 1560 (5th Cir.1985). It is often difficult to determine whether a claimant alleges a single wrong, a series of separate acts for which the limitation period begins again for each violation, or a violation resulting from implementation of a continuing illegal policy. See Perez v. Laredo Junior College, 706 F.2d 731, 734 (5th Cir.1983), cert. denied, 464 U.S. 1042, 104 S.Ct. 708, 79 L.Ed.2d 172 (1984). It is well established that the continuing effects of past harm do not bring the claim within the continuing violation doctrine. See Lorance, supra; Delaware State College v. Ricks, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); Taylor, 775 F.2d at 619.

▬ Continuing violations are "occasioned by continuing unlawful acts, not by continued ill effects from an original violation." See Altair Corp. v. Pesquera de Busquets, 769 F.2d 30, 32 (1st Cir.1985). To succeed on a continuing violation theory, the plaintiffs must show that subsequent actions of the defendants are linked together with and follow directly from pre-limitations acts. See Fleming v. New York University, 865 F.2d 478, 482 (2d Cir.1989) ("To allege a continuing violation, the complaint must allege a present and ongoing violation of the law."). In the context of employment discrimination, the Second Circuit has held that

> [t]he continuing violation exception applies when there is evidence of an ongoing discriminatory policy or practice, such as use of discriminatory seniority lists or employment tests. Although discrete incidents of discrimination that are not the result of a discriminatory policy or practice will not ordinarily amount to a continuing violation,

see Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir.1994); Lambert v. Genesee Hosp.,

10 F.3d 46, 53 (2d Cir.1993), cert. denied, 511 U.S. 1052 [114 S.Ct. 1612, 128 L.Ed.2d 339] (1994), "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice," continuing violation may be found, Cornwell, 23 F.3d at 704. Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 713 (2d Cir.1996); see Lightfoot v. Union Carbide Corp., 110 F.3d 898, 906–07 (2d Cir.1997). To invoke the continuing violation doctrine, the discrimination charge must be timely with respect to at least one of the allegedly unlawful incidents. Lambert, 10 F.3d at 53.

The plaintiffs cite one case, New Port Largo, Inc. v. Monroe County, 706 F.Supp. 1507 (S.D.Fla.1988), vacated, 985 F.2d 1488 (11th Cir.1993), in which the continuing violations theory was applied outside of the Title VII area. In New Port Largo, the defendants were alleged to have committed a regulatory "taking" by rezoning the plaintiffs' property for the benefit of adjacent homeowners and the county. In applying the continuing violation doctrine, the court noted that the subsequent acts alleged were sufficiently related to the initial act to toll the statute of limitations:

> The first act was the passage of the zoning ordinance. The next acts were the filing of two lawsuits by Monroe County in an attempt to permanently take the property. The result of these various acts by defendants was to continue the temporary taking of the plaintiff's property.

Id. at 1517.

However, the district court's opinion was vacated and remanded by the Eleventh Circuit. See New Port Largo, Inc. v. Monroe County, 985 F.2d 1488 (11th Cir.1993). The Eleventh Circuit held that the plaintiff's federal regulatory takings claim did not accrue until: (1) the state judicial authorities made a final determination on the status of the subject property affected by the zoning ordinance; and (2) the plaintiff was denied an adequate post-deprivation remedy. Id. at 1493. In the present case, the plaintiffs do not allege a regulatory taking.

The Court is aware of one case within the Second Circuit in which the continuing viola-

tion theory was applied. *See Greene v. Town of Blooming Grove,* No. 87 CIV. 0069, 1988 WL 126877 (S.D.N.Y. Nov. 21, 1988), *aff'd in part, rev'd in part,* 879 F.2d 1061 (2d Cir. 1989). In *Greene,* Judge Kram applied the continuing violation theory to a constitutional attack on a zoning ordinance, noting as follows:

> If the ordinance is constitutionally invalid, it would constitute the equivalent of a continuing invasion of plaintiffs' property rights akin to a continuing trespass—a situation in which a new cause of action arises in plaintiffs [sic] favor against the city each day.... Thus, the statute of limitations does not bar a meritorious attack on a zoning ordinance.

*Id.,* 1988 WL 126877, at *4 (citations omitted). However, *Greene* is factually distinguishable from the present case. Unlike *Greene,* the plaintiffs are not attacking the constitutional validity of an ordinance.

Although the plaintiffs in the present case allege takings of two different parcels of property, which the plaintiffs "knew or had reason to know" of such when Petervary signed and delivered the deeds to the Village, the Court finds that the allegations culminating in the conveyances of property to the Village may constitute an over-arching policy of the Village to deny the grants of approvals and permits unless it received concessions from the applicants. In this regard, the Court notes that the plaintiffs do not allege an isolated incident of inverse condemnation. Instead, they allege two takings and a third attempt by the Village. In addition, they allege that Paul C. Maggio received similar treatment. *See* Complaint ¶ 54. Hence the Court finds that the continuing violations theory is applicable to toll the statute of limitations.

ii. *Ripeness*

■ Although the plaintiffs' claims may have been timely brought, the Court finds that the plaintiffs' inverse condemnation claims are not ripe for review.

■ The Supreme Court has held that Section 1983 claimants are not required to exhaust state judicial or administrative reme-

dies before filing suit in federal court. *See Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). An exception to this no-exhaustion rule arises in takings issues brought pursuant to Section 1983, wherein the claimant must pursue state remedies before the Section 1983 action will lie. *See Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). In *Williamson,* the Supreme Court held that two conditions must be fulfilled before a claimant may properly bring an action for a taking without just compensation:

> 1. the claimant must have sought a final decision as to the permitted use of the property; and
> 2. the claimant must seek just compensation for the taking from the state government if a procedure is available to the claimant.

*Williamson,* 473 U.S. at 194, 105 S.Ct. at 3120. The second prong of the *Williamson* analysis, that a plaintiff must first seek just compensation from the State, is based on the following rationale:

> [t]he recognition that a property owner has not suffered a violation of the Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State for obtaining such compensation.

*Id.* at 195, 105 S.Ct. at 3121. The *Williamson* Court then held that Tennessee's statutory provision providing a cause of action for inverse condemnation by an aggrieved property owner, was adequate. *Id.* at 196, 105 S.Ct. at 3121–22 (citing Tennessee Code § 29–16–123). In *Villager Pond, supra,* the Second Circuit extended *Williamson* to both physical and regulatory takings.

■ In the present case, the first prong of the *Williamson* test is satisfied since the two parcels of property transferred by deed to the Village and the 200 foot buffer zone allegedly included in the Village map, without Petervary's prior consent, constitute physical, rather than regulatory, takings. A physical taking claim "is by definition a final decision, and thereby satisfies *Williamson*

*County's* first exhaustion requirement." *See Sinaloa Lake Owners Ass'n v. City of Simi Valley,* 882 F.2d 1398, 1402 (9th Cir.1989), *cert. denied,* 494 U.S. 1016, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990).

However, the plaintiffs do not fulfill the second prong of the *Williamson* test. The complaint is devoid of any allegation that Petervary made an application to, and was denied just compensation by, the State of New York pursuant to N.Y. Em. Dom. Proc. Law § 101, et seq., or pursuant to Article I, Section 7 of the New York Constitution. In the alternative, Petervary does not allege that New York's "inverse condemnation procedure is unavailable or inadequate." *See HBP Associates v. Marsh,* 893 F.Supp. 271, 278 (S.D.N.Y.1995) (citing *Williamson,* 473 U.S. at 196–97, 105 S.Ct. at 3121–22). Therefore, the plaintiffs' claims, with regard to the first and second conveyances and the 200 foot buffer zone, are not ripe for review due to the plaintiffs' failure to seek an inverse condemnation hearing or a similar state action prior to filing this suit. *See Villager Pond,* 56 F.3d at 381 ("The inverse condemnation requirement of *Williamson* applies whenever compensation is sought for land that is taken, whether the taking occurs by direct governmental action or by the indirect action of obtaining the land as a condition of issuing a permit."); *Southview Assoc. Ltd. v. Bongartz,* 980 F.2d 84, 99–100 (2d Cir.1992), *cert. denied,* 507 U.S. 987, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993); *McCormack Sand Co. v. Town of North Hempstead Solid Waste Management Authority,* 960 F.Supp. 589, 595 (E.D.N.Y.1997). Therefore, for these reasons the Court dismisses the plaintiffs' claims of inverse condemnation.

The Court notes that the parties advance arguments with regard to the waiver by the Village of the plaintiffs' performance bond in exchange for the second conveyance. However, since: (1) the waiver of the alleged performance bond constitutes matters outside the scope of the complaint; (2) the document referred to by the parties was not attached as an exhibit to the complaint; and (3) the Court is not able to take judicial notice of the waiver of the performance bond,

the Court excludes these arguments from its consideration.

The Court further notes that the plaintiffs allege that during November 1996, Shybunko attempted to coerce another one acre parcel of property from the plaintiffs in exchange for occupancy inspection approvals on the completed homes. However, since the plaintiffs do not allege a physical or regulatory taking of this property, the Court finds that no taking of this property in violation of the Fifth and Fourteenth Amendments has occurred.

### iii. *Remaining Section 1983 claims*

The plaintiffs do not expressly state in the complaint nor in their briefs what constitutional violations, other than the takings of Petervary's property without just compensation, were allegedly perpetrated by the defendants. As noted by the Supreme Court in *Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 811–12, 127 L.Ed.2d 114 (1994):

> Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan,* 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3, 61 L.Ed.2d 433 (1979). The first step in any such claim is to identify the specific constitutional right allegedly infringed. *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989); and *Baker v. McCollan, supra,* 443 U.S., at 140, 99 S.Ct., at 2692.

The Court finds that the plaintiffs are also alleging deprivations of their property right without due process. First, the plaintiffs are alleging a deprivation of property arising from the delay of the Village's approval or denial of the subdivision map. Second, the plaintiffs allege that the delayed approval of the framing, plumbing and insulation on the homes infringed upon the plaintiffs' substantive and procedural due process rights. Third, the plaintiffs allege that the denial of the certificates of occupancy infringed upon the plaintiffs' substantive and procedural due process rights.

To state a claim for violation of substantive or procedural due process, the

plaintiffs must initially allege that they had a constitutionally cognizable property interest. *See RRI Realty Corp. v. Incorporated Village of Southampton,* 870 F.2d 911, 918 (2d Cir.), *cert. denied,* 493 U.S. 893, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989); *Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 59 (2d Cir.1985). The Supreme Court set forth the following test to guide the courts in determining whether such property interest exists:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. . . . He must, instead, have a legitimate claim of entitlement to it.

*Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The Second Circuit has held that a plaintiff does not have a federal property right in a licence or certificate unless, "there is either a certainty or a very strong likelihood that the application would have been granted." *See Yale Auto Parts,* 758 F.2d at 59. The Second Circuit later reaffirmed and emphasized this holding:

> If federal courts are not to become zoning boards of appeals (and not to substitute for state courts in their state law review of local land-use regulatory decisions), the entitlement test of *Auto Parts Yale*—"certainty or a very strong likelihood" of issuance—must be applied with considerable rigor.

*RRI Realty Corp.,* 870 F.2d at 918. Rather than focusing on the probability of the grant or denial of the application, the issue turns on the discretion that may be exercised by the governmental entity in granting the application. *Crowley v. Courville,* 76 F.3d 47, 52 (2d Cir.1996); *Zahra v. Town of Southold,* 48 F.3d 674, 680 (2d Cir.1995).

### a. *Approval of the subdivision map*

■ Under N.Y. Village Law, planning boards are vested with the authority to weigh evidence and exercise their discretion in approving or denying approval of a subdivision plat. The planning board is to consider, *inter alia,* the prospective character of the development, whether a reservation of a parkland is necessary, and the suitability of the location, width and grade of streets and highways. *See* N.Y. Village Law § 7–730. Because the planning board has wide discretion in determining whether or not to approve the plaintiffs' subdivision plat, the Court finds that the plaintiffs' have no property right in such approval. *See Sullivan v. Town of Salem,* 805 F.2d 81, 85 (2d Cir.1986); *Cedarwood Land Planning v. Town of Schodack,* 954 F.Supp. 513, 524–25 (N.D.N.Y. 1997).

### b. *Approval of the framing, plumbing and insulation and issuance of the certificates of occupancy*

■ In *Sullivan, supra,* the plaintiff was denied certificates of occupancy on the homes he had constructed until the town had accepted the roads for dedication as town roads. The Second Circuit held that the plaintiff had a property interest in the certificates of occupancy since the plaintiff was entitled to the certificates of occupancy if the houses fully conformed to all state and municipal requirements:

> If the houses complied with the applicable state and municipal requirements, there was no element of discretion or judgment remaining for the building official to exercise in determining whether to issue the certificates. Under those circumstances, denial of the certificates of occupancy solely because the roads had not been accepted would constitute a deprivation of property without due process.

*Id.* (citing *Acorn Ponds v. Incorporated Village of North Hills,* 623 F.Supp. 688, 692 (E.D.N.Y.1985)).

■ Applying *Sullivan* to the present case, the Court finds that the plaintiffs have cognizable property interests in the approval of the framing, plumbing and insulation of the homes, and the issuance of the certificates of occupancy if the plaintiffs satisfied all regulatory requirements governing such approvals and the issuance of such certificates. However, the plaintiffs do not allege in their complaint that they complied with all such requirements. The plaintiffs do not allege that any regulations governing the framing, plumbing and insulation of the homes were satisfied. With regard to the

certificates of occupancy, the Court notes that the plaintiffs allege that "all relevant requirements set forth by the VILLAGE were satisfied." *See* Complaint ¶ 43. The plaintiffs do not allege whether they satisfied the relevant state regulations, if any. Therefore, the Court finds that the plaintiffs have not alleged entitlements to the approval of the framing, plumbing and insulation of the homes nor the issuance of certificates of occupancy. Since the plaintiffs have failed to allege protectible property interests, their due process claims must be dismissed for failure to state a claim upon which relief can be granted.

The Court notes that if the plaintiffs are able to correct the defects in their complaint by alleging that they have complied with all regulatory requirements governing the framing, plumbing and insulation of homes and certificates of occupancy, they will have constitutionally cognizable property interests. Therefore, the Court will next examine whether the plaintiffs are able to plead claims for violation of procedural and substantive due process.

■ With regard to procedural due process, the plaintiffs have alleged that it is the practice and policy of the Village to abuse their powers, require unreasonable conditions and violate applicants' constitutional rights. *See* Complaint ¶¶ 53–55. Absent from the complaint are allegations that the plaintiffs sought post-deprivation remedies or that such remedies were adequate. However, in *Sullivan*, 805 F.2d at 86, the Second Circuit held that if a building official's improper denial of a certificate of occupancy was either established or pursuant to town policy, the existence of adequate post-deprivation remedies will not bar a claim for violation of procedural due process. Therefore, since the plaintiffs have alleged that the deprivation of their property right was pursuant to Village policy, the Court finds that the plaintiffs may be able to state claims for violations of procedural due process.

■ In addition, the Court finds that the plaintiffs have satisfied the second requirement in asserting a deprivation of substantive due process, namely, that the defendants acted in an arbitrary and irrational manner in depriving them of their property interest. *See Crowley*, 76 F.3d at 52 (2d Cir.1996). The plaintiffs have alleged that Village officials make arbitrary and capricious Planning Board determinations. *See* Complaint ¶ 51. Indeed, the conditioning of the Village's approval for the framing, plumbing and insulation of homes, and the issuance of the certificates of insurance on Petervary's conveyance of two parcels of property may be so arbitrary that substantive due process was violated. *See Villager Pond*, 56 F.3d at 379; *Walz v. Town of Smithtown*, 46 F.3d 162, 169 (2d Cir.), cert. denied, 515 U.S. 1131, 115 S.Ct. 2557, 132 L.Ed.2d 810 (1995). The Court concludes that if the plaintiffs are able to amend their complaint under the constraints set forth by Fed.R.Civ.P. 11 to allege constitutionally cognizable property interests, the plaintiffs are able to state claims for deprivation of procedural and substantive due process.

### D. *Second Cause of Action*

Plaintiffs concede that the claim for conspiracy should not have been brought pursuant to 42 U.S.C. § 1985, since he is not a member of a protected class under this statute. *See Gagliardi v. Village of Pawling*, 18 F.3d 188, 193–94 (2d Cir.1994). Therefore, the Court grants the plaintiffs' voluntary withdrawal of their second cause of action.

■ In this regard, the plaintiffs claim that the action should have been brought as a conspiracy to commit a violation of the plaintiffs' constitutional rights pursuant to Section 1983, and has advised the Court of an impending motion to amend their complaint to reflect this change. However, the Court finds that the plaintiffs' allegations in the present complaint are insufficient as a matter of law to state a claim for conspiracy under Section 1983.

In actions brought pursuant to Section 1983, the Second Circuit requires a heightened pleading requirement. The Second Circuit has set forth the following level of specificity required in Section 1983 claims alleging conspiracy:

> We have, of course, repeatedly held that in order to state a claim of conspiracy under

§ 1983 the complaint must contain more than mere conclusory allegations.... And while a plaintiff should not plead mere evidence, he should make an effort to provide some "details of time and place and the alleged effect of the conspiracy."... Thus, complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed: "[d]iffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct."

*Dwares v. City of New York*, 985 F.2d 94, 99–100 (2d Cir.1993). In the present case, the plaintiffs claim that the allegations against the individual defendants are pled with sufficient specificity. The Court disagrees.

The plaintiffs maintain that the defendants perpetrated the following acts:

1. The Village "demanded the impossible," *see* Complaint ¶ 40;

2. Kycia "attempted to use her position ... to harass plaintiff into making unnecessary changes on the homes built by plaintiff, has attempted to require plaintiff to perform illegal tasks for which they are not bonded and has even attempted to require that plaintiff make changes to homes which have been built, sold and have inhabitants residing within ...," *see* Complaint ¶ 41;

3. Wiedersum "requested that plaintiff perform impossible tasks within unreasonable time constraints," *see* Complaint ¶ 42;

4. Harris failed to "approve work in progress" and "inspect plaintiffs' homes," *see* Complaint ¶ 43; and

5. Williams, Liew, Sayre, Shybunko, Zingale and Weiss "caused unnecessary delays to the approval or denial of the building applications ... requiring illegal tasks of plaintiffs," *see* Complaint ¶ 44.

The Court finds that these allegation are insufficient to satisfy the pleading requirements set forth by the Second Circuit in *Dwares, supra.* If the plaintiffs desire to amend this cause of action, they are required to give some details of the time, place, events and the alleged effect of the conspiracy. For example, the plaintiffs allege that the Village demanded "the impossible." *See* Complaint ¶ 40. The plaintiffs are required to specify what these impossible tasks were that the Village requested the plaintiffs complete.

### E. Third Cause of Action

■ The plaintiffs' third cause of action citing negligent conduct by the various defendants is not actionable under Section 1983, *see Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 620 (2d Cir.1996), and is therefore dismissed by the Court.

The plaintiffs' contend that this claim should be read as a supplemental state law claim. The Court grants the plaintiffs permission to amend this cause of action, provided that the plaintiffs are able to plead that they have provided the prerequisite notice of claim upon the Village as mandated by N.Y. Gen. Mun. Law § 50–e.

### F. Fourth Cause of Action

■ The plaintiffs' final cause of action is for punitive damages against the defendants in their individual and official capacities. The plaintiffs recognize that punitive damages are not available against the Village, since municipalities are absolutely immune from punitive damages liability. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). In addition, punitive damages may not be awarded against individuals sued in their official capacity. *See Yorktown Medical Laboratory, Inc. v. Perales*, 948 F.2d 84, 89 (2d Cir.1991). The plaintiffs contend that "[s]ince personal interests motivated several of the [d]efendants in this case to act as they did in this matter, punitive damages are available to those [d]efendants who were sued in their official and individual capacities." Opp. Mem. at 17. The Court finds this argument unpersuasive. The plaintiffs cite no authority in support of this proposition. Accordingly, the Court concludes that the plaintiffs may seek punitive damages against the individual defendants in their individual capacities and dismisses such claim against the Village and the individual defendants in their official capacities.

### G. *Motion to amend*

In their opposition papers, the plaintiffs contend that after a decision has been rendered in the present motion to dismiss, they will move the Court to amend their complaint. Pursuant to Fed.R.Civ.P. 15(a), "leave shall be freely given when justice so requires." *See Jaser v. New York Property Ins. Underwriting Ass'n,* 815 F.2d 240, 243 (2d Cir.1987).

A motion to amend should be denied only for good reason such as " 'undue delay, bad faith, futility of amendment, and perhaps, most important, the resulting prejudice to the opposing party.' " *Richardson Greenshields Secur., Inc. v. Mui–Hin Lau,* 825 F.2d 647, 653 n. 6 (2d Cir.1987) (quoting *State Teachers Retirement Board v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir.1981)). . . . Mere delay alone will not suffice as a basis for the district court to deny the right to amend. *Richardson Greenshields,* supra, 825 F.2d at 653 n. 6. Parties have been permitted to assert new claims long after they acquired the facts necessary to support such claims, *see, e.g., Green v. Wolf Corp.,* 50 F.R.D. 220, 223 (S.D.N.Y.1970), and have even been permitted to amend a complaint on the eve of trial. *See Hanlin v. Mitchelson,* 794 F.2d 834 (2d Cir.1986).

*Christiana General Ins. Corp. of New York v. Great American Ins. Co.,* 745 F.Supp. 150, 164 (S.D.N.Y.1990).

In the present case, the Court finds, without considering the actual underlying merits, that the plaintiffs' claims, once amended as discussed above, are not futile and could arguably state causes of action. To conserve judicial resources, the Court grants the plaintiffs leave to amend their complaint in conformity with this Memorandum Decision and Order, without the necessity of a formal motion. The plaintiffs are advised to heed the directions offered by the Court with regard to pleading the amended complaint and not repeat the mistakes made in the original one.

### III. CONCLUSION

Having reviewed the parties' submissions, and heard oral argument, and for the reasons set forth above, it is hereby

**ORDERED,** that the plaintiffs advise the Court and the defendants, by letter, within ten days from August 15, 1997, the date that the Court rendered its oral decision on the present motion to dismiss, whether Deepwells Estates Inc. will withdraw as a plaintiff, and it is further

**ORDERED,** that the defendants' motion to dismiss the plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(6), is granted without prejudice; and it is further

**ORDERED,** that the plaintiffs are granted leave to serve and file an amended complaint within thirty (30) days from August 15, 1997, in conformity with this Memorandum Decision and Order and in compliance with the constraints imposed by Fed.R.Civ.P. 11. No extension of time will be granted to the plaintiffs.

**SO ORDERED.**